## BRADLEY *v.* SALMON FALLS MAN. CO.

Evidence that a party had in his possession a paper containing printed regulations of the manufactory in which he was employed as a laborer, is not conclusive evidence that the contents were known to him.

Where a witness testified that a party *seemed* to acquiesce in a proposal that had been submitted, it was left to the jury to consider this evidence in connection with the acts of the party at the time, tending to show the contrary.

ASSUMPSIT, to recover for sixteen days work in the defendants' mill, commencing July 21, 1853.

The defence set up is, that the wages were forfeited by virtue of the following provision in the "regulations" of the mill, to wit:

" Any person intending to leave the company's employ, must give notice to his or her overseer, two weeks at least previous to leaving, and continue to work until the expiration of the notice. Those who leave contrary to this regulation, (cases of sickness, excepted,) will forfeit their wages then due, and will not be settled with or paid till such notice is regularly given and worked out.

The defendants called the overseer of the room in which Bradley worked, whose testimony was in substance this: In May or June, 1853, Bradley came to me with a printed regulation paper in his hand, and I took it and entered his name upon my book, and handed the paper back to him and set him to work. About seven weeks afterwards, through some cause or other, he had some little trouble with one of the hands, and got a blow on the eye, but with no breaking of the skin. He came to me and showed his eye. I told him he had better stay out till it would be proper for him to go to work, and for the time he was out I would disallow the wages of the hand that struck him, and his wages should go on, and when he could work he should come in, and should not suffer any on account of his eye, and then, if he required it, I would dismiss the man who struck him. He seemed satisfied with this. He went out and staid several

days, but was in once or twice, and his eye was getting better, and at last there was no appearance of injury, except black around the eye. A day or two after, I heard he was at work at Great Falls. About five weeks from the time of the blow, he came to me and wished to settle. I told him he had left in violation of the rule, without giving notice and working his time out, and I had hired another man in his place, (which was the fact,) and I would not pay him. He offered to work his notice out then, but I told him it was too late, that the rule required that the notice be worked out before leaving. No credit was given him upon the time-book after his eye was injured. Similar regulation papers were posted up in the room where he worked. Every one who works in my room, whether he can read or not, has such a paper given him, and brings it to me to have me take his name from it, as was done in this instance. I do not know whether Bradley can read or not."

The defendants' counsel stated, in his opening, that he believed the plaintiff was a foreigner.

The court instructed the jury that it was competent for the parties to make an agreement by which the wages for two weeks would be forfeited, if the workman left without giving the required notice; if the plaintiff had entered into such an agreement, and then left in violation of it, his wages were forfeited, and his subsequent offer would not restore them; that there were two questions for them to consider: Did the plaintiff enter into such an agreement? Did he leave in violation of it?

As to the first, the burden of proof is upon the defendants, to show that this provision of this regulation-paper was made known to him, and then if he went to work without objection, his assent to it should be presumed. The law makes no presumption either that he could or could not read. You will decide as a matter of fact whether this provision in any way came to his knowledge before the services

were performed.   As to the second question, if his eye was injured, as stated by the witness, so that he could not labor in the mill, his case comes within the exception, and he could then leave, as a matter of right, without giving notice; but, so far as the second question is concerned, the case turns upon this:—When did he leave the employment of the company?   Was it when he received the injury, and while he was unable to work?   Or was it not until his·eye had recovered so that he could labor?   If at the former time, there was no forfeiture; but if at the latter, he cannot recover.

The jury found for the plaintiff.   The defendants moved to set the verdict aside, because of said instructions.

*Christie & Kingman,* for the defendants.

The principal question, in this case, is conclusively settled in *Rice* v. *Dwight Man. Co.*, 2 Cush. 80.   In that case, the court say :  " When a party enters into a written contract, in the absence of fraud or imposition, he is conclusively presumed to understand the terms and legal effect of it, and to assent to them. * * * If it were clearly proved, [the operative's ignorance of the contents of the written contract,] it would be dangerous to permit the contract to be avoided on the ground of ignorance."

In the present case, the court ruled that the burden of proof was upon the defendants, to show that the stipulation as to notice and forfeiture, contained in the regulation paper, were made known to the plaintiff before he went to work.   The case finds that the plaintiff carried a regulation paper, with his name written on it, to the overseer with whom he worked, who took his name from the paper, and handed it back to the plaintiff.   This is all that was proved in *Rice* v. *Dwight Man. Co.*, and the court should have ruled, as in that case, that the plaintiff was conclusively presumed to understand and assent to the terms and legal effect of the regulation paper.   This doctrine is also dis-

tinctly recognized and enforced by the superior court of Maine, in the case of *Harmon* v. *Salmon Falls Man. Co.,* recently reported, in which the terms and stipulations of this same "regulation paper" are carefully considered, and held to be binding on the operatives to whom they are delivered. The court say, " the operative's knowledge of the provisions of the regulation paper, is to be inferred from the employer's having delivered to her a printed copy of such paper. * * * The plaintiff, by continuing to work for the company after these regulations were delivered to her, must be considered as having agreed to them."

On the second point, there was no evidence from which the jury were authorized to find that the plaintiff left in consequence of the injury he received, and at the time of receiving it. The proposition of the overseer, that he should stay out of the mills while his eye was black, was accepted by the plaintiff, and acted on by him for several days; he was, therefore, precluded from taking the position,—in this state of the evidence, and there was no other evidence in the case,—that he left the defendants' employment in consequence of sickness ; and the court should not have submitted this point to the jury without instructions to find for the defendants. For it does not follow that he left in consequence of sickness, because he left when he received the injury. The proof is that he assented to the proposition of the overseer, and was in and about the mills until his eye got about well.

*R. Eastman,* for the plaintiff.

Woods, C. J. That the jury were properly instructed to inquire whether the contents of the regulation paper were made known to the plaintiff before he went to work for the defendants, so far at least as the paper related to the giving of notice, and that the burden was upon the defendants to prove the affirmative, is not, as we understand, contro-

verted in this case. The difficulty arises from an apprehension, on the part of the defendants, that the proof of that necessary fact was made by the evidence, which was clear and uncontradicted, that the plaintiff had the paper itself in his hands, and, for aught that appears, might have read it. But we think that something more was necessary. Without doubt it was evidence from which an inference might well have been drawn that the plaintiff did read the paper. But whether he did so or not, was still, upon the evidence, an open question; and whether he could read or not was, as the judge who tried the cause correctly ruled, a question not of law but of fact.

This is not a case of a written contract, in which the party who has signed it is estopped, in the absence of fraud or imposition, to deny that the contents were known to him.

We also think that it was properly left to the jury, upon the evidence, to inquire whether the plaintiff left the defendants' employment at the time he received the injury, or after he was sufficiently recovered to admit of his returning to his work. The evidence was clear that a proposition was made to him to leave his work till such time as he could properly return to it, and to receive his wages during the interval. But there is not that clear proof of his acceptance of the proposal, but that the jury might have been properly charged with the inquiry whether it were so. The witness stated that the plaintiff seemed satisfied with the proposal. This was proper evidence, to be weighed with the fact that he did not return to claim the wages, and that he entirely ceased to work from the time he received the injury.

On the whole, we discover no error in the course of the trial, and are of opinion that there should be

*Judgment on the verdict.*